### DAUER v. HILDEBRANDT.

BOUNDARIES—ESTOPPEL—FRAUD.

> A., the owner of a parcel of land supposed to contain 40 acres, conveyed to B. and C. each 12½ acres of the north 25 acres, and to D. the south 15 acres of such parcel. It subsequently developed that the parcel did not contain full 40 acres. A boundary dispute arose between C. and D., and in a suit in ejectment brought by the latter, wherein defendant claimed that plaintiff had agreed to a line as established by a certain surveyor engaged by defendant, it appeared that the surveyor, without the knowledge of plaintiff, had divided the land by giving to B. and C. the full amount described in their deeds, reducing plaintiff's parcel to the extent of the shortage. The evidence tended to show that B. and C. were parties to such arrangement. *Held,* that there was at least a question of fraud for the jury.

Error to Saginaw; Wilber, J. Submitted June 20, 1896. Decided July 21, 1896.

Ejectment by Margaret Dauer against Joseph Hildebrandt. From a judgment for defendant, plaintiff brings error. Reversed.

*J. H. Davitt* and *H. E. Naegely*, for appellant.

*Ferdinand Brucker*, for appellee.

HOOKER, J.	The plaintiff and defendant were adjoining landowners upon a 40-acre lot, and together with one Haas, who owned a parcel to the north of the defendant, upon the same 40, derived their respective titles from the same source. The several deeds purported to convey land as follows, viz.: To Haas, the north 12½ acres of the north 25 acres of the 40; to the defendant, the south 12½ of said 25 acres; to the plaintiff, the south 15 acres of the 40. These deeds, in terms, purport to convey 40 acres of land; but, as a fact, the 40 was not full, but fractional. We discover nothing in the record that indicates that there was any uncertainty about the boundaries of the 40, and the several parcels were susceptible of easy ascertainment under legal rules, by a mere computation and measurement. The defendant took possession of his parcel, and built a fence upon or near his south line; a portion of it being rail fence, and the remainder brush. Subsequently the plaintiff entered, and replaced the brush fence by a wire fence, on a line not exactly in conformity to that occupied by the rail fence. Neither party professed to know just where the line was, and there was testimony offered tending to show that there was talk about having a surveyor. The strongest evidence of an agreement between the parties is found in the testimony of the defendant, who said:

"She said she did not know where the line was. She said she wanted to find out, and wanted to get a surveyor to survey it. So did Mr. Haas."

The defendant thereupon obtained the surveyor, and the land was surveyed, and two or three days later the surveyor called upon the plaintiff for a portion of his pay, and obtained it. He told her that he had staked out the line, and that the defendant would show her

where it was. This defendant did. He testifies that, before he showed her the stakes, he told her that she would get a strip of his land, and he would get a strip of hers.

"This talk was in the house, and then we went out in the field, and I showed her everything. We went to the line between her and me,—to the east and west line. We went the whole length of it. We started at the corner. I told her she would get a strip of mine, and I would get a strip of hers. I showed her where the posts were on the east line, on the east end of the line, and on the west end. She said she was satisfied that those fences should stay there; after awhile I might move it over on the line. She said the 55 rods of fence was on the line, and she was satisfied with it. The balance of the fence was the wire fence she had built. She said that when the fence was rotted down she would move it over, and I could use her piece of ground, and she could use mine; there was no difference in the land. That was on the west end between mine and hers. I owned 40 acres of land west of Mrs. Dauer's. The survey that Leavenworth made in 1890 showed that her west line was on me. There was a wire fence and posts along there. Mrs. Dauer built it.

"Q. State what should be done with the strip of land with the posts and wire fence on, running north and south. State the conversation you had with Mrs. Dauer with reference to it.

"A. Let it stand until it rotted off; then she would move it over to the east. It made no difference, she said; she was gaining as much as I was.

"Q. The agreement, then, was that the fence that she had built—the wire fence—was to remain there until the posts rotted off?

"A. Yes.

"Q. And the rail fence that you had built—the 55 rods—was on the line between you and her?

"A. Yes; she said the land on the south side of the wire fence was hers.

"Q. What did she say,—that she was satisfied that the rail fence was on the line, and that should be the line between you and her, if anything?

"A. That could remain there, she said."

Defendant's wife testified about the transaction as fol-
lows:

"I remember when the survey was made by Leaven-
worth between Mrs. Dauer's and my husband's land.
I saw Mrs. Dauer not long after that. She came to my
house, and I asked if she was satisfied about the survey,
and she said, 'Yes.' My husband showed her the line,
and she said the line, the way it stood, was her right line,
and the line makes it kind of slanting, and if the posts are
rotten she was going to replace with new ones. My hus-
band went with her to show her the line. Mrs. Dauer came
to the house and had a talk after they looked at the line.
They were satisfied. I didn't go with my husband and Mrs.
Dauer to look at the line after it was measured. I went
out of the house with my husband and Mrs. Dauer when
they went to look at the line. I went as far as the middle
of the road, and watched them go to the rear end of the
lot. When they came back Mrs. Dauer said she was
satisfied, and the fence was on the right line; that is,
the rail fence. My husband built the new barn after the
talk with Mrs. Dauer."

On cross-examination the defendant testified as follows:

"*Q.* State what, if any, talk you had with Mrs. Dauer,
before the commencement of this suit, about her moving
that fence. We are talking about the wire fence.

"*A.* She came over to my house, and said the boys
didn't have nothing to do, and she would like to move her
fence. That was in April. She didn't say where she
was going to move it. That is, the wire fence we have
been speaking of, east and west. I told her she could
move it any time where Leavenworth drove or measured
it. She said she didn't want to; she wanted another sur-
veyor. I told her she could have ten, if she wanted to,
but I wasn't going to pay anything towards it any more;
the line that Leavenworth gave us was good enough.
That conversation was this spring."

Not only does the evidence of the plaintiff fail to show
that there was an agreement to leave the settlement of
a disputed boundary to the arbitration of anybody, but it
also shows that she took no part in the selection of the
surveyor. She was ignorant of the fact that one was to
be, or was, employed, unless it is to be inferred from the

expression of a desire to have it surveyed to ascertain the line, which line was not in dispute. She denied that she ever assented that it should be the line when it was shown to her, and that the defendant supposed she had so consented is improbable, in the light of the testimony quoted from his cross-examination, which indicates that when she expressed dissatisfaction with the survey, and wanted another, he assented to it, but declined to help pay for it, because he was satisfied with the first survey. He afterwards tried to prevent its being made. At the time of the survey the surveyor made a plat of the premises, and gave a copy of it to Haas; and there is reason to suppose that the defendant saw it, if he did not have a similar one. Defendant's brief appears to admit that he had one. From this plat it clearly appears that the land was divided by giving to Haas and the defendant each $12\frac{1}{2}$ acres, being the full amount described in their deeds. The plaintiff's parcel was reduced to the full extent of the shortage. This was not a lawful division, and we think that the defendant's own testimony justifies the conclusion that he and Haas obtained an undue advantage over this plaintiff, who was never shown a plat, or informed that the shortage was taken from her premises. We think, therefore, that it cannot be said that this boundary was settled in good faith, and acquiesced in, and that the court not only should have left the question of fraud to the jury, but that he should have instructed the jury to return a verdict for the plaintiff.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.